SEMNAR & HARTMAN, LLP
Babak Semnar (SBN 224890)
bob@sandiegoconsumerattorneys.com
Jared Hartman (SBN 254860)
jared@sandiegoconsumerattorneys.com
41707 Winchester Road, Suite 201
Temecula, CA 92590
Telephone: (951) 293-4187; Fax: (888) 819-8230

Attorneys for PLAINTIFF, GARY WARNE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY WARNE, an individual,<br><br>PLAINTIFF,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION, LLC; AMERICAN EXPRESS COMPANY; BANK OF AMERICA, N.A.; BARCLAYS BANK DELAWARE; JP MORGAN CHASE BANK; CITIBANK, N.A.; DISCOVER BANK; NASA FEDERAL CREDIT UNION; PENTAGON FEDERAL CREDIT UNION,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>1. **Calif. Civ. Code § 1785.25(a);**<br>2. **15 U.S.C. § 1681s-2(b);**<br>3. **Calif. Civ. Code § 1798.93;**<br>4. **Calif. Civ. Code §1788.17;**<br>5. **15 U.S.C. § 1681i;**<br>6. **15 U.S.C. § 1681e** |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THE HONORABLE DISTRICT COURT JUDGE:

PLAINTIFF, GARY WARNE, an individual, by and through his attorneys of record, hereby complain and allege as follows.

**INTRODUCTION**

1.     GARY WARNE ("PLAINTIFF"), by and through his attorneys, brings this Complaint against Defendants AMERICAN EXPRESS COMPANY ("AMEX"), BANK OF AMERICA, N.A. ("B OF A"), BARCLAYS BANK DELAWARE ("BARCLAYS"), JP MORGAN CHASE BANK ("CHASE"), CITIBANK, N.A. ("CITI"),  DISCOVER BANK ("DISCOVER"), NASA FEDERAL CREDIT UNION ("NASA"), and PENTAGON FEDERAL CREDIT UNION ("PENFED") for furnishing inaccurate/incomplete/misleading   information   in   violation   of   Calif.   Civ.   Code §1785.25(a)   of   the   Calif.   Consumer   Credit   Reporting   Agencies   Act   ("CALIF. CCRAA"), for failing to conduct a reasonable re-investigation of PLAINTIFF's dispute as to the inaccurate information in violation of 15 U.S.C. §1681s-2(b) of the Federal Fair Credit Reporting Act ("FCRA"), for continuing to collect a consumer debt after being notified in writing of the debt being subject to identity theft in violation of Civ. Code § 1798.93, and for violations of the Rosenthal Fair Debt Collection Practices Act.

2.     PLAINTIFF also brings causes of action against Defendants EXPERIAN INFORMATION   SOLUTIONS,   INC.   (hereinafter   "EXPERIAN"),   EQUIFAX INFORMATION SERVICES, LLC (hereinafter "EQUIFAX"), and TRANS UNION, LLC (hereinafter "TU") for failing to conduct a reasonable investigation into a written dispute in violation of 15 U.S.C. §1681i of the FCRA and Calif. Civ. Code §1785.16 of the CALIF. CCRAA and for preparing and publishing reports to third-parties after failing to follow reasonable procedures to ensure maximum possible accuracy in violation of 15 U.S.C. § 1681e of the FCRA and in violation of Calif. Civ. Code § 1785.14 of the Calif. CCRAA.

**JURISDICTION & VENUE**

3.     This action arises out of all Defendants' violations of the FCRA, over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p.  Jurisdiction arises pursuant to 28 U.S.C. §1367 for supplemental state claims.

4.     All Defendants regularly and purposely conduct business within the County of Riverside, State of California.   Therefore, personal jurisdiction is established.

5.     Because all tortious conduct occurred within PLAINTIFF resided in the County of Riverside, and witnesses are present therein, venue properly lies in this court pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

5.     At some point in or about January 2020, PLAINTIFF discovered that his son (William Warne) had committed identity theft against him by the following: 1) using some credit cards and lines of credit issued in PLAINTIFF'S name for his own unauthorized purposes, 2) adding himself as an authorized user to some credit cards without PLAINTIFF'S knowledge and authorization, and 3) by also opening some credit cards and lines of credit in PLAINTIFF'S name without PLAINTIFF'S knowledge or consent.

6.     In order to hide his fraudulently activity from PLAINTIFF, William Warne also changed the telephone number and email address on many accounts to be William Warne's telephone number and email address instead of PLAINTIFF'S so that PLAINTIFF would not receive statements or phone calls from creditors that would otherwise have notified PLAINTIFF of the son's fraudulent spending.

7.     William Warne would even occasionally make payments on some of the accounts in PLAINTIFF'S name in order to ensure the accounts would remain open so that he could continue using them fraudulently for his own personal benefit.

8.     William Warne proceeded to use the cards and lines of credit, at least in part, to flee the country and travel around the world.

9.     Eventually, William Warne racked up nearly $300,000.00 in debt in PLAINTIFF'S name.

10.     PLAINTIFF contacted law enforcement and requested criminal prosecution.

3

**Complaint for Damages and Injunctive Relief**

11.     At the present time, law enforcement is conducting an investigation and is planning to pursue criminal charges against William Warne.

12.     PLAINTIFF has also discovered that William Warne has committed identity theft and fraud against his former business partner, who has also sought criminal prosecution.

13.     William Warne has never returned back to California and is presently suspected to be somewhere in Madison, Wisconsin trying to hide from law enforcement to escape prosecution of his criminal activities.

14.     In January of 2020, PLAINTIFF began to send to the creditors letters that enclosed copies of the police reports to notify them of the situation and to request investigations into the charges fraudulently incurred in his name by William Warne.

15.     PLAINTIFF also submitted written dispute letters to each of the consumer credit reporting agencies—EXPERIAN, EQUIFAX, and TU.

*Facts related to EQUIFAX*

16.     By letter dated February 20, 2020, PLAINTIFF notified EQUIFAX of the facts of the identity theft and notified EQUIFAX of the accounts that he was disputing, and enclosed copies of the police reports pertaining to his identity theft prosecution against his son.

17.     Certified return mail confirms that EQUIFAX received this letter on February 25, 2020.

18.     However, EQUIFAX never provided any response at all to PLAINTIFF and completely failed to process PLAINTIFF'S dispute as required by 15 U.S.C. § 1681i.

19.     As a result, PLAINTIFF provided another letter to EQUIFAX, dated May 18, 2020, that again notified EQUIFAX of the facts of the identity theft and notified EQUIFAX of the accounts that he was disputing, and again enclosed copies of the police reports pertaining to his identity theft prosecution against his son.

20.     Certified return mail confirms that EQUIFAX received this second letter

**Complaint for Damages and Injunctive Relief**

on May 28, 2020.

21.     However, EQUIFAX provided a response dated July 21, 2020 that shows that EQUIFAX only processed the dispute with respect to one of eight accounts he was disputed in his May 28th letter.

22.     As such, it is clear that EQUIFAX has completely refused to perform its obligations under 15 U.S.C. § 1681i as to any disputes from PLAINTIFF, because EQUIFAX completely failed to process the February 20th dispute at all, failed to process the May 18th dispute within the mandatory 30 days, and failed to process the May 18th dispute with respect to 7 out of 8 accounts in dispute.

23.     As a direct result of EQUIFAX'S failures to follow clear and express statutory requirements, EQUIFAX has published credit reports on numerous occasions to third parties without having or following reasonable procedures to ensure the maximum possible accuracy of the information about PLAINTIFF—the consumer to whom the information pertains—in violation of 15 U.S.C. § 1681e.

*Facts related to EXPERIAN*

24.     By letter dated February 20, 2020, PLAINTIFF notified EXPERIAN of the facts of the identity theft and notified EXPERIAN of the accounts that he was disputing, and enclosed copies of the police reports pertaining to his identity theft prosecution against his son.

25.     Certified return mail confirms that EXPERIAN received this letter on February 24, 2020.

26.     However, no response was provided by EXPERIAN as to this first dispute letter at all, so PLAINTIFF sent additional dispute letters to EXPERIAN dated May 18, 2020 and June 12, 2020 that also notified EXPERIAN of the facts of the identity theft and notified EXPERIAN of the accounts that he was disputing, and enclosed copies of the police reports pertaining to his identity theft prosecution against his son.

27.     Certified mail receipt confirms that EXPERIAN received these additional dispute letters on May 29, 2020 and June 15, 2020, respectively.

**Complaint for Damages and Injunctive Relief**

28.   EXPERIAN notified PLAINTIFF that it provided notices of the disputes to each of the creditors subject of each dispute.

29.   However, despite its clear obligations to conduct a reasonable re-investigation of each disputed account, EXPERIAN simply parroted the information provided to it by the furnishers, with many of them falsely verifying to EXPERIAN that their respective accounts are accurately being reported against PLAINTIFF.

30.   As such, EXPERIAN failed to consider all information supplied by PLAINTIFF in connection with his disputes.

31.   Moreover, EXPERIAN failed to conduct a re-investigation into whether PLAINTIFF was the subject of identity theft, which is evidenced by the fact that EXPERIAN unilaterally concluded that PLAINTIFF'S claim of identity theft was false and notified PLAINTIFF that it was declining to block the accounts that PLAINTIFF had disputed (even though PLAINTIFF did not specifically request a block of the accounts but only requested a security freeze and requested an investigation into the disputed accounts).

32.   EXPERIAN also failed to delete the tradelines that could not be verified.

33.   As such, EXPERIAN engaged in multiple violations of 15 U.S.C. § 1681i.

34.   As a direct result of EXPERIAN'S failures to follow clear and express statutory requirements, EXPERIAN has published credit reports on numerous occasions to third parties without having or following reasonable procedures to ensure the maximum possible accuracy of the information about PLAINTIFF—the consumer to whom the information pertains—in violation of 15 U.S.C. § 1681e.

### *Facts related to TU*

35.   By letters dated February 20, 2020 and May 18, 2020, PLAINTIFF notified TU of the facts of the identity theft and notified TU of the accounts that he was disputing, and enclosed copies of the police reports pertaining to his identity theft prosecution against his son.

36.   Certified return mail confirms that TU received these letters on February

24, 2020 and May 27, 2020, respectively.

37.   TU notified PLAINTIFF that it provided notice of the disputes to many of the creditors subject of each dispute.

38.   However, TU failed to process PLAINTIFF'S disputes as to some of the tradelines listed in his dispute letters, which is evidenced by the fact that it only provided PLAINTIFF with results as to some but not all of the disputed accounts.

39.   With respect to the accounts it did process, TU failed to conduct a reasonable re-investigation by simply parroting the information provided to it by the furnishers with them falsely verifying to TU that  their respective accounts are accurately being reported against PLAINTIFF.

40.   As such, TU failed to consider all information supplied by PLAINTIFF in connection with his disputes.

41.   Moreover, TU failed to conduct a reasonable re-investigation into whether PLAINTIFF was the subject of identity theft.

42.   TU also failed to delete the tradelines that could not be verified.

43.   As such, TU engaged in multiple violations of 15 U.S.C. § 1681i.

44.   As a direct result of TU'S failures to follow clear and express statutory requirements, TU has published credit reports on numerous occasions to third parties without having or following reasonable procedures to ensure the maximum possible accuracy of the information about PLAINTIFF—the consumer to whom the information pertains—in violation of 15 U.S.C. § 1681e.

*Facts related to AMEX*

45.   By letter dated June 4, 2020, PLAINTIFF submitted a written dispute directly with AMEX notifying AMEX of the identity theft committed against him and enclosed copies of the police reports.

46.   PLAINTIFF'S dispute to AMEX was pertaining to four different credit cards.

47.   Certified mail return receipt confirms that AMEX received this letter on

1    June 12, 2020.

2         48.    By letters dated June 19, 2020 and July 2, 2020, AMEX rejected

3    PLAINTIFF'S disputes as to two of the accounts subject of the dispute because the

4    claimed address on the account is not the same address as on his dispute letter.

5         49.    However, this completely ignores the fact that PLAINTIFF'S dispute letter

6    notified AMEX that his son had changed the address on the identity theft accounts in

7    order to deprive PLAINTIFF of receiving statements related to the accounts as a way of

8    attempting to hide his perpetration of the identity theft.

9         50.    AMEX received PLAINTIFF'S disputes to the credit reporting agencies,

10   which also included copies of the police reports, but in response AMEX falsely verified

11   to the consumer credit reporting agencies that its reporting of the accounts being owed

12   by PLAINTIFF were accurate, and AMEX refused to delete the reporting, and even

13   after receiving PLAINTIFF'S disputes AMEX updated its reporting of the accounts to

14   report that thousands of dollars are allegedly past due by PLAINTIFF and that

15   PLAINTIFF has remained delinquent on the accounts.

16        51.    Upon information and belief, AMEX was at all times relevant in

17   possession of documents that would have confirmed PLAINTIFF'S report of identity

18   theft, including the spending history and the telephone number and email address being

19   consistent with PLAINTIFF'S son's fraudulent activities.

20        52.    As such, AMEX failed to consider all information supplied by

21   PLAINTIFF in connection with his disputes, and failed to review its own records in

22   connection with the dispute, and therefore failed to conduct a reasonable re-

23   investigation as required by 15 U.S.C. § 1681s-2(b).

24        53.    Also, AMEX has furnished information to the consumer credit reporting

25   agencies that it knows or has reason to know is inaccurate or incomplete in violation of

26   Calif. Civ. Code § 1785.25(a)

27        54.    By being provided with PLAINTIFF'S written dispute letters and copies of

28   the relevant police reports, AMEX was placed on written notice that a situation of

8

**Complaint for Damages and Injunctive Relief**

identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has persisted in maintaining it possesses an interest in the alleged debts against PLAINTIFF by continuing to report the accounts as being owed by PLAINTIFF in his name.

55.     More than 30 days has passed since PLAINTIFF put AMEX on such written notice before filing the instant lawsuit.

56.     Additionally, AMEX'S reporting of the accounts as being owed by PLAINTIFF in his name amount to misrepresentations as to the character and status of the alleged debts.

*Facts related to B OF A*

57.     On or about February 5, 2020, PLAINTIFF provided to B OF A a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying B OF A that he is disputing the accounts subject of identity theft in his name and provided to B OF A copies of the police reports.

58.     Following up, by letter dated March 6, 2020, PLAINTIFF again notified B OF A that he is disputing the accounts subject of identity theft in his name and provided to B OF A with each dispute letter copies of the police reports.

59.     Certified return mail confirms that the March 6, 2020 letter was delivered to B OF A on March 10, 2020.

60.     By letter dated April 1, 2020, B OF A asked PLAINTIFF to provide an identity theft affidavit and a police report claiming it needed these items in order to investigate his report of identity theft.

61.     However, PLAINTIFF had already provided both of these items to B OF A previously, which compels the conclusion that B OF A failed to properly investigate PLAINTIFF'S identity theft disputes submitted in January and March of 2020.

62.     B OF A received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but in response B OF A falsely verified to the consumer credit reporting agencies that its reporting of negative balances owed

**Complaint for Damages and Injunctive Relief**

by PLAINTIFF were accurate, and B OF A refused to delete the reporting, and even after receiving PLAINTIFF'S disputes B OF A updated its reporting of the accounts to reflect new negative balances alleged to be owed by PLAINTIFF, including submitting updates in June and July of 2020 (after receiving notice of PLAINTIFF'S disputes to the credit reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the accounts.

63.    Upon information and belief, B OF A was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

64.    As such, B OF A failed to consider all information supplied by PLAINTIFF in connection with his disputes, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

65.    Also, B OF A has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a)

66.    PLAINTIFF submitted another written dispute to B OF A regarding identity theft and again included the police reports, such letter dated June 19, 2020.

67.    Certified return mail confirms this letter was delivered on June 25, 2020.

68.    By letter dated June 26, 2020, B OF A affirmatively notified PLAINTIFF that it has rejected his claim of identity theft and notified PLAINTIFF that it would continue to pursue any delinquency on the accounts.

69.    Additionally, B OF A has since persisted in attempting to collect from PLAINTIFF thousands of dollars, including by a statement ending July 7, 2020 and claiming there is a total balance owed of $33,467.22 with a minimum payment of $4,882.00 due by August 4, 2020.

**Complaint for Damages and Injunctive Relief**

70.   The actions of B OF A in updating its credit reporting claiming PLAINTIFF still owes thousands of dollars equates to B OF A maintaining a claim on the account as against PLAINTIFF.

71.   However, by being provided with PLAINTIFF'S written dispute letters that included copies of the relevant police reports, B OF A was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has since persisted in asserting a claim against PLAINTIFF.

72.   More than 30 days has passed since PLAINTIFF put B OF A on such written notice before filing the instant lawsuit.

73.   Additionally, B OF A's attempts to collect monies after being placed on notice of the identity theft issues as a result of his son's fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

*Facts related to BARCLAYS*

74.   By letters dated March 2, 2020, June 12, 2020, and June 18, 2020, PLAINTIFF notified BARCLAYS that he is disputing the accounts subject of identity theft in his name and provided to BARCLAYS with each dispute letter copies of the police reports.

75.   Certified return mail confirms these letters were delivered to BARCLAYS on March 11, 2020, June 18, 2020, and June 29, 2020, respectively.

76.   By letters dated March 27, 2020, July 15, 2020, July 22, 2020, and July 23, 2020, BARCLAYS notified PLAINTIFF that it is rejecting PLAINTIFF'S disputes of identity theft and informed him that he will remain responsible for any balance on the account as well as any fees, interest, and finance charges.

77.   Upon information and belief, BARCLAYS was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being

11

**Complaint for Damages and Injunctive Relief**

consistent with PLAINTIFF'S son's fraudulent activities

78.     Furthermore, BARCLAYS received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but BARCLAYS falsely verified to the consumer credit reporting agencies that its reporting of a negative balance owed by PLAINTIFF is accurate, has refused to delete the reporting, and even after receiving PLAINTIFF'S disputes BARCLAYS updated its reporting in June of 2020 (after receiving notice of PLAINTIFF'S disputes to the credit reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the accounts.

79.     As such, BARCLAYS has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

80.     Also, BARCLAYS has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

81.     By being provided with PLAINTIFF'S written dispute letters and copies of the relevant police reports, BARCLAYS was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has since persisted in claiming that PLAINTIFF will remain responsible for any balance on the account as well as any fees, interest, and finance charges and thereby persisted in claiming it maintains an interest in the alleged debts against PLAINTIFF.

82.     More than 30 days has passed since PLAINTIFF put BARCLAYS on such written notice before filing the instant lawsuit.

83.     Additionally, BARCLAYS's assertions that PLAINTIFF will remain responsible for any balance on the account as well as any fees, interest, and finance charges after being placed on notice of the identity theft issues as a result of his son's

12

**Complaint for Damages and Injunctive Relief**

fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

### *Facts related to CHASE*

84.     In January of 2020, CHASE sent at least two letters to PLAINTIFF notifying PLAINTIFF that it had unilaterally discovered cards had been opened in his name fraudulently and that CHASE was closing the cards subject of those notices.

85.     As a result, CHASE is well aware of PLAINTIFF being a victim of identity theft.

86.     Also in January of 2020, PLAINTIFF provided to CHASE a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying CHASE that he is disputing the accounts subject of identity theft in his name and provided to CHASE copies of the police reports.

87.     Following up, by letters dated February 27, 2020 and June 19, 2020, PLAINTIFF again notified CHASE that he is disputing the accounts subject of identity theft in his name and provided to CHASE with each dispute letter copies of the police reports.

88.     Certified return mail confirms that these letters were delivered to CHASE on March 10, 2020 and June 26, 2020, respectively.

89.     However, CHASE notified PLAINTIFF that on the cards it did not unilaterally close in January 2020 that it is rejecting his claims of identity theft and has claimed he remains responsible for the debts on those cards.

90.     Upon information and belief, CHASE was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

91.     Furthermore, CHASE received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but CHASE falsely verified to the consumer credit reporting agencies that its reporting of a negative

balance owed by PLAINTIFF is accurate, has refused to delete the reporting, and even after receiving PLAINTIFF'S disputes CHASE updated the accounts to report new and additional amounts allegedly in default, including in July of 2020(after receiving notice of PLAINTIFF'S disputes to the credit reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the accounts.

92. As such, CHASE has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

93. Also, CHASE has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

94. The actions of CHASE in claiming PLAINTIFF remains fully responsible for the balances alleged to be owed and also by updating its credit reporting claiming PLAINTIFF still owes thousands of dollars, equate to CHASE maintaining a claim on the accounts as against PLAINTIFF.

95. However, by being provided with PLAINTIFF'S written dispute letters that included copies of the relevant police reports, CHASE was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has since persisted in asserting a claim against PLAINTIFF.

96. More than 30 days has passed since PLAINTIFF put CHASE on such written notice before filing the instant lawsuit.

97. Additionally, CHASE'S attempts to collect monies after being placed on notice of the identity theft issues as a result of his son's fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

*Facts related to CITI*

98.     In January of 2020, PLAINTIFF provided to CITI a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying CITI that he is disputing the accounts subject of identity theft in his name and provided to CITI copies of the police reports.

99.     Also in January of 2020, CITI sent PLAINTIFF a letter claiming that they suspected suspicious unauthorized activity on his accounts, which confirms that CITI had reason to know that PLAINTIFF was a victim of identity theft.

100.    Following up, by letter dated March 6, 2020, PLAINTIFF again notified CITI that he is disputing the accounts subject of identity theft in his name and provided to CITI with each dispute letter copies of the police reports.

101.    Certified return mail confirms that the March 6, 2020 letter was delivered to CITI on March 14, 2020.

102.    Furthermore, CITI received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but CITI falsely verified to the consumer credit reporting agencies that its reporting of a negative balance owed by PLAINTIFF is accurate, has refused to delete the reporting, and even after receiving PLAINTIFF'S disputes CITI updated the accounts to report new and additional amounts allegedly in default, including most recently submitting an update in June of 2020 (after receiving notice of PLAINTIFF'S disputes to the credit reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the accounts.

103.    Upon information and belief, CITI was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

104.    As such, CITI has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in

connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

105.   Also, CITI has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

106.   Furthermore, in June of 2020, CITI notified PLAINTIFF in writing that it is rejecting his claims of identity theft.

107.   CITI has since sent multiple written notices to PLAINTIFF attempting to collect thousands of dollars from him on the disputed accounts plus interest and fees.

108.   Even after rejecting PLAINTIFF'S dispute of identity theft, CITI has sent two letters to PLAINTIFF in July of 2020 notifying him that they have determined there is suspicious activity on his account based on recent fraud trends, which shows even CITI has reason to know that PLAINTIFF is the victim of identity theft and its previous rejection of his claims of identity theft are unreasonable and without substantiation.

109.   Even while notifying PLAINTIFF of it determining suspicious activity exists on the account, CITI also sent statements to PLANTIFF on the same account attempting to collect at the same time to collect thousands of dollars from PLAINTIFF plus interest and fees.

110.   By being provided with PLAINTIFF'S written dispute letters and copies of the relevant police reports, CITI was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has since persisted in claiming that PLAINTIFF will remain responsible for any balance on the accounts and thereby persisted in claiming it maintains an interest in the alleged debts against PLAINTIFF.

111.   More than 30 days has passed since PLAINTIFF put CITI on such written notice before filing the instant lawsuit.

112.   Additionally, CITI'S assertions that PLAINTIFF will remain responsible for any balance on the account after being placed on notice of the identity theft issues as

a result of his son's fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

*Facts related to DISCOVER*

113.   In January of 2020, DISCOVER sent at least one letters to PLAINTIFF notifying PLAINTIFF that it was investigating whether cards had been opened in his name fraudulently and that DISCOVER was closing the cards subject of those notices.

114.   As a result, DISCOVER is well aware of PLAINTIFF being a victim of identity theft.

115.   Also in January of 2020, PLAINTIFF provided to DICOVER a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying DISCOVER that he is disputing the accounts subject of identity theft in his name.

116.   Certified mail confirms this letter was delivered to DISCOVER on February 4, 2020.

117.   However, DISCOVER notified PLAINTIFF in writing in February of 2020 that it was rejecting his claim of identity theft, but without giving him any reason, and notified him that it was opening a new card in his name and transferring the balance from the old card to the new card and also indicated that PLAINTIFF is responsible for the full balance on the new card.

118.   Following up, by letters dated February 27, 2020 and June 18, 2020, PLAINTIFF again notified DISCOVER that he is disputing the accounts subject of identity theft in his name and provided to DISCOVER with each dispute letter copies of the police reports.

119.   Certified return mail confirms that these letters were delivered to DISCOVER on March 11, 2020 and July 1, 2020, respectively.

120.   However, in July of 2020, DISCOVER sent correspondence to PLAINTIFF claiming he still needed to provide them with a completed identity theft affidavit, which is false because he already had done so in January of 2020, which

**Complaint for Damages and Injunctive Relief**

confirms that DISCOVER failed to conduct a reasonable investigation by failing to review all relevant documents and correspondence in its own possession.

121.   Furthermore, DISCOVER notified PLAINTIFF in July of 2020 that it is rejecting his claims of identity theft and has claimed he remains responsible for the debts on those cards and has continued to send him correspondence claiming he owes thousands of dollars plus fees and interest.

122.   Upon information and belief, DISCOVER was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

123.   Furthermore, DISCOVER received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but DISCOVER falsely verified to the consumer credit reporting agencies that its reporting of a negative balance owed by PLAINTIFF is accurate and even after receiving PLAINTIFF'S disputes DISCOVER updated the accounts as recently as June of 2020 (after receiving notice of PLAINTIFF'S disputes to the credit reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the accounts.

124.   As such, DISCOVER has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

125.   Also, DISCOVER has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

126.   By being provided with PLAINTIFF'S written dispute letters and copies of the relevant police reports, DISCOVER was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a

reasonable investigation into the dispute and has since persisted in claiming that PLAINTIFF will remain responsible for any balance on the accounts and thereby persisted in claiming it maintains an interest in the alleged debts against PLAINTIFF.

127.   More than 30 days has passed since PLAINTIFF put DISCOVER on such written notice before filing the instant lawsuit.

128.   Additionally, DISCOVER'S assertions that PLAINTIFF will remain responsible for any balance on the account after being placed on notice of the identity theft issues as a result of his son's fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

### *Facts related to NASA*

129.   In January of 2020, PLAINTIFF provided to NASA a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying NASA that he is disputing the accounts subject of identity theft in his name and provided to NASA copies of the police reports.

130.   Following up, by letters dated February 27, 2020 and June 18, 2020, PLAINTIFF again notified NASA that he is disputing the accounts subject of identity theft in his name and provided to NASA with each dispute letter copies of the police reports.

131.   Certified return mail confirms that these letters were delivered March 10, 2020 and June 25, 2020, respectively.

132.   Furthermore, NASA received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but NASA falsely verified to the consumer credit reporting agencies that its reporting of a negative balance owed by PLAINTIFF is accurate, has refused to delete the reporting, and even after receiving PLAINTIFF'S disputes NASA updated the accounts to report new and additional amounts allegedly in default, including submitting updates in March, April, and May of 2020 (after receiving notice of PLAINTIFF'S disputes to the credit

**Complaint for Damages and Injunctive Relief**

reporting agencies) to update its reporting that thousands of dollars are allegedly past due by PLAINTIFF and that PLAINTIFF has remained delinquent on the account.

133.   Upon information and belief, NASA was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

134.   As such, NASA has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

135.   Also, NASA has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

136.   Furthermore, NASA engaged in multiple efforts to collect thousands of dollars from PLAINTIFF even after it received PLAINTIFF'S numerous disputes of identity theft, which amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts

### *Facts related to PENFED*

137.   In January of 2020, PLAINTIFF provided to PENFED a completed and signed identity theft affidavit, which was signed under penalty of perjury, notifying PENFED that he is disputing the accounts subject of identity theft in his name and provided to PENFED copies of the police reports.

138.   Following up, by letters dated February 27, 2020 and June 18, 2020, PLAINTIFF again notified PENFED that he is disputing the accounts subject of identity theft in his name and provided to PENFED with each dispute letter copies of the police reports.

139.   Certified return mail confirms that these letters were delivered March 11, 2020 and June 25, 2020, respectively.

140.   Furthermore, PENFED received PLAINTIFF'S disputes to the credit reporting agencies, which also included copies of the police reports, but PENFED falsely verified to the consumer credit reporting agencies that its reporting of a negative balance owed by PLAINTIFF is accurate, has refused to delete the reporting, and even after receiving PLAINTIFF'S disputes PENFED updated the accounts to report new and additional amounts allegedly in default, including most recently submitting an update in July of 2020 reporting an outstanding balanced owed with thousands of dollars past due.

141.   Upon information and belief, PENFED was at all times relevant in possession of documents that would have confirmed PLAINTIFF'S report of identity theft, including the spending history and the telephone number and email address being consistent with PLAINTIFF'S son's fraudulent activities.

142.   As such, PENFED has failed to consider all information supplied by PLAINTIFF in connection with his dispute, and failed to review its own records in connection with the dispute, and therefore failed to conduct a reasonable re-investigation as required by 15 U.S.C. § 1681s-2(b).

143.   Also, PENFED has furnished information to the consumer credit reporting agencies that it knows or has reason to know is inaccurate or incomplete in violation of Calif. Civ. Code § 1785.25(a).

144.   Furthermore, PENFED has engaged in multiple efforts to collect thousands of dollars from PLAINTIFF even after it received PLAINTIFF'S numerous disputes of identity theft, including threatening him in April 2020 with a lawsuit if he did not pay the amounts alleged to be owed within 10 days and also exclaiming to him that he had better find a good lawyer to defend himself against PENFED'S collection attempts.

145.   By being provided with PLAINTIFF'S written dispute letters and copies of the relevant police reports, PENFED was placed on written notice that a situation of identity theft might exist, yet after receiving such written notice failed to conduct a reasonable investigation into the dispute and has since persisted in claiming that

PLAINTIFF will remain responsible for any balance on the accounts and thereby persisted in claiming it maintains an interest in the alleged debts against PLAINTIFF.

146.   More than 30 days has passed since PLAINTIFF put PENFED on such written notice before filing the instant lawsuit.

147.   Additionally, PENFED'S assertions that PLAINTIFF will remain responsible for any balance on the account after being placed on notice of the identity theft issues as a result of his son's fraudulent activities amounts to unlawful attempts to collect monies not actually owed and misrepresentations as to the character and status of the alleged debts.

### *Damages relevant to all DEFENDANTS*

148.   As a result of the disputed and inaccurate information remaining in PLAINTIFF'S consumer credit files, as a direct result of each DEFENDANTS' refusals and failures to comply with clear and express statutory requirements in response to PLAINTIFF'S disputes, PLAINTIFF has suffered and continues to suffer economic harm by way of inaccurate and derogatory information remaining in his credit file that creates an undeniably inaccurate picture of his standing as consumers, and creates an undeniably inaccurate picture of his creditworthiness, which has in turn caused him to suffer a significantly lower consumer credit score and has also caused him to not be able to apply for and obtain any credit in his name truly that he would otherwise use for his and his family's benefit.

149.   PLAINTIFF'S consumer credit scores will remain lower than what it should be, as a direct result of his credit files considering the falsely reported monthly payments and outstanding balance as current obligations of PLAINTIFF, which factor against PLAINTIFF'S favor in his debt to income ratio.

150.   Potential creditors will evaluate PLAINTIFF'S creditworthiness as if his debt to income ratio is much worse than what it actually should be, because if the disputed accounts were not reported against him in such a manner then his debt to income ratio would be much more favorable.

151.   Consequently, PLAINTIFF'S consumer credit scores are lower than they otherwise should be, because all consumer credit scoring models factor debt to income ratio such that a higher amount of debt obligations compared to a lower income result in a lower credit score because the consumer appears to be a credit risk.

152.   PLAINTIFF has also been damaged by way of mental anguish and emotional distress such as anger, nervousness, embarrassment, loss of sleep, and feelings of distraught and helplessness.

## FIRST CAUSE OF ACTION
## CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT
## Calif. Civ. Code §1785.25
## (AGAINST DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED ONLY)

153.   PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

154.   As the furnisher of information to credit reporting agencies, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED, have all remained obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if it knew or should have known the information was incomplete or inaccurate, as required by Calif. Civ. Code § 1785.25(a) of the California CCRAA.

155.   Even if the derogatory reporting is technically accurate, it is still a violation of this law if the derogatory reporting is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.  *Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal. App. 4th 548.

156.   AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED have all violated their obligations under Section 1785.25(a) of the Calif. CCRAA both by initially reporting to the consumer credit reporting agencies the disputed account as belonging to PLAINTIFF and also by subsequently verifying to the

credit reporting agencies in response to PLAINTIFF'S dispute letters and also by submitting new alleged outstanding balances after receiving PLAINTIFF'S dispute letters, when in reality each of them either knew or should have known the accounts did not belong to PLAINTIFF.

157.   PLAINTIFF is informed and believes that AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED violations were negligent at a minimum, but were willful in that they each acted with such a high degree of risk of committing a legal violation that was higher than mere carelessness, because they were placed on actual notice of PLAINTIFF specific details for the dispute, but failed to process the disputes taking such details into consideration and failed to comply with clear statutory obligations.

158.   As a result of these negligent and willful violations, PLAINTIFF has suffered actual damages as identified in the statement of facts above.

**SECOND CAUSE OF ACTION**
**FEDERAL FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)**
**(AGAINST DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED ONLY)**

159.   PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

160.   As the furnisher of information to credit reporting agencies, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED have all remained obligated pursuant to 15 U.S.C. § 1681s-2(b) to conduct a reasonable re-investigation into a dispute notified to them by the consumer credit reporting agencies, which also requires them to consider all information supplied by the consumer in connection with the dispute.

161.   AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED violated their obligations under 15 U.S.C. §1681-s2(b) by verifying to the

consumer credit reporting agencies the disputed accounts as belonging to PLAINTIFF, when in reality they either knew or should have known the accounts did not belong to PLAINTIFF and should have requested that the account be deleted from PLAINTIFF'S credit files.

162.   Had AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED conducted a reasonable re-investigation into PLAINTIFF'S disputes, then they would have discovered that the disputed account did not belong to PLAINTIFF and would have requested that the accounts be deleted from his credit file.

163.   By failing to do so, however, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED inaccurately verified the account as belonging to PLAINTIFF and caused the credit reporting agencies to continue inaccurately reporting the account as a debt owed by PLAINTIFF.

164.   PLAINTIFF is informed and believes that AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, and PENFED violations were negligent at a minimum, but were willful in that they each acted with such a high degree of risk of committing a legal violation that was higher than mere carelessness, because they were placed on actual notice of PLAINTIFF specific details for the dispute, but failed to process the disputes taking such details into consideration and failed to comply with clear statutory obligations.

165.   As a result of these negligent and willful violations, PLAINTIFF has suffered actual damages as identified in the statement of facts above.

### THIRD CAUSE OF ACTION
### CALIF. IDENTITY THEFT PROTECTION ACT
### Calif. Civ. Code § 1798.93
### (AGAINST DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED ONLY)

166.   PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

167.   California's Identity Theft Law allows a "victim of identity theft" to bring

an action for damages, civil penalties, and injunctive relief against a "claimant to establish that the person is a victim of identity theft in connection with the claimant's claim against that person." Cal. Civ. Code § 1798.93(a) and (c).

168.   "Identity theft means the unauthorized use of another person's personal identifying information to obtain credit, goods, services, money, or property." Cal. Civ. Code § 1798.92(b).

169.   "Personal identifying information means a person's name, address, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, or credit card number." Cal. Civ. Code § 1798.92(c).

170.   "Claimant" means "a person who has or purports to have a claim for money or an interest in property in connection with a transaction procured through identity theft." Cal. Civ. Code § 1798.92(a).

171.   PLAINTIFF is a victim of identity theft because 1) William Warne use PLAINTIFF'S name and personal identifying information to open credit cards and lines of credit in PLAINTIFF'S name so that William Warne could use them to his own personal benefit without PLAINTIFF'S knowledge or authorization, and 2) William Warne used cards and lines of credit that were already in PLAINTIFF'S name to make personal purchases and expenditures for his own personal benefit without PLAINTIFF'S knowledge or authorization.

172.   More than 30 days prior to the filing of this lawsuit, PLAINTIFF provided written notices to AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, AND PENFED that a situation of identity theft might exist, and in his written notices he explained the basis for that belief and he provided them with copies of the police reports.

173.   PLAINTIFF also had previously provided identity theft affidavits signed under penalty of perjury and included copies of police reports.

174.   Upon information and belief, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED have each been in possession of sufficient documentation to conclude that PLAINTIFF is the victim of identity theft on each account and that each account was fraudulently opened and/or utilized by William Warne.

175.   However, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED each failed to conduct a reasonable investigation and each have persisted in maintaining a claim that PLAINTIFF remains responsible on each account.

176.   Consequently, AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED have each continued to pursue claims that they each have a present interest in the debts even after being presented with facts that will entitle PLAINTIFF to a judgment pursuant to this section.

177.   As a result of these negligent and willful violations, PLAINTIFF has suffered actual damages as identified in the statement of facts above.

**FOURTH CAUSE OF ACTION**
**CALIF. ROSENTHAL ACT**
**Calif. Civ. Code § 1788.17**
**(AGAINST DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI,**
**DISCOVER, NASA, AND PENFED ONLY)**

178.   PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

179.   At all times during the aforementioned actions, there was in full force and effect the following obligation for a debt collector in connection with the collection of any debt, pertaining to pursuant to California Civil Code § 1788.17 of the Rosenthal Act, requiring all debt collectors to be responsible for and liable for all requirements contained with the Federal FDCPA, exceptions of which are not applicable:

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive,

of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

180. PLAINTIFF is as a natural person allegedly obligated to pay consumer debts to DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED for credit cards and lines of credit issued for personal and household expenses, which were alleged to have been due and owing, which means PLAINTIFF is therefore a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the Rosenthal Act.

181. DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED alleged that PLAINTIFF owed them money that they were allegedly collecting for personal credit cards and lines of credit, and PLAINTIFF is therefore informed and believes that the money alleged to have been owed originated from monetary credit that was extended primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by Calif. Civil Code § 1788.2(d) of the Rosenthal Act.

182. Upon information and belief, DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED each was attempting to collect on a debt that originated from monetary credit that was extended primarily for personal, family, or household purposes, without payment being required at the time of the transaction, and the transactions subject of their collection attempts was therefore a "consumer credit transaction" within the meaning of Calif. Civil Code § 1788.2(e) of the Rosenthal Act.

183. Because PLAINTIFF, a natural person allegedly obligated to pay money to DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER,

NASA, AND PENFED arising from a consumer credit transaction, the money allegedly owed was a "consumer debt" within the meaning of California Civil Code § 1788.2(f) of the Rosenthal Act.

184. PLAINTIFF is informed and believes that DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED regularly collect or attempts to collect on behalf of themselves debts owed or due or asserted to be owed or due, and each is therefore a "debt collector" within the meaning of Calif. Civil Code § 1788.2(c) of the Rosenthal Act, and thereby engages in "debt collection" within the meaning of California Civil Code § 1788.2(b) of the Rosenthal Act, is also therefore a "person" within the meaning of California Civil Code § 1788.2(g) of the Rosenthal Act, and is also a "creditor" under California Civil Code § 1788.2(i).

185. At all times relevant, DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED were obligated to comply with all such requirements of the Federal FDCPA incorporated into the Rosenthal Act pursuant to Calif. Civ. Code § 1788.17.

186. By attempting to collect amounts that PLAINTIFF did not owe by virtue of the amounts alleged arising from identity theft, DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED have engaged in multiple violations of the FDCA as follows, all of which are necessarily violations of the Rosenthal FDCPA via Calif. Civ. Code 1788.17:

      a. 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to oppress PLAINTIFF in connection with the collection of a debt,

      b. 15 U.S.C. §1692e by using false, deceptive, and misleading representations in connection with the collection of a debt,

      c. 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount, and legal status of the debt,

      d. 15 U.S.C. §1692e(10) by using false representations and deceptive means

1          to attempt to collect a debt,

2        e. 15 U.S.C. §1692f by using unfair and unconscionable means to attempt to

3          collect a debt,

4        f. 15 U.S.C. §1692f(1) by collecting an amount not authorized by agreement

5          or by law.

6       187. By furnishing false and misleading information to the consumer credit

7 reporting agencies that PLAINTIFF is obligated on the accounts, DEFENDANTS

8 AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED

9 have engaged in multiple on-going violations of the Federal FDCA as follows, all of

10 which are necessarily violations of the Rosenthal FDCPA via Calif. Civ. Code 1788.17:

11        a. 15 U.S.C. §1692e(8), by furnishing credit reporting information to the

12          consumer credit reporting agencies that each DEFENDANT knew or

13          should know is false,

14        a. 15 U.S.C. §1692d by engaging in conduct the natural consequence of

15          which is to oppress PLAINTIFF in connection with the collection of a

16          debt,

17        b. 15 U.S.C. §1692e by using false, deceptive, and misleading representations

18          in connection with the collection of a debt,

19        c. 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount, and

20          legal status of the debt,

21        d. 15 U.S.C. §1692e(10) by using false representations and deceptive means

22          to attempt to collect a debt,

23        e. 15 U.S.C. §1692f by using unfair and unconscionable means to attempt to

24          collect a debt,

25        f. 15 U.S.C. §1692f(1) by collecting an amount not authorized by agreement

26          or by law

27       188. The actions taken by DEFENDANTS AMEX, BARCLAYS, B OF A,

28 CHASE, CITI, DISCOVER, NASA, AND PENFED that form the basis of

**Complaint for Damages and Injunctive Relief**

PLAINTIFF'S Rosenthal FDCPA violations in this matter were always done in an attempt to collect money from PLAINTIFF.

189.   DEFENDANTS' violations of the Rosenthal FDCPA were willful, because DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED at all times knew, or should have known, that the actions giving rise to such violations were wrongful and in violation of the law.

190.   DEFENDANTS' violations have caused PLAINTIFF damages as explained in the factual allegations above.

**FIFTH CAUSE OF ACTION**
**FEDERAL FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681i**
**(AS AGAINST DEFENDANTS EXPERIAN, EQUIFAX, AND TU ONLY)**

191. PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

192.   Consumer credit reporting agencies are required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute".  15 U.S.C. § 1681i(a)(1).

193.   Pursuant to 15 U.S.C. § 1681i(a)(2)(A), the consumer credit reporting agencies are required to provide, within 5 business days of receiving the notice of dispute from the consumer, "notification of the dispute to any person [furnisher] who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller".

194.   Pursuant to 15 U.S.C. § 1681i(a)(4), "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information

submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information."

195.   Furthermore, pursuant to 5 U.S.C. § 1681i(a)(6), the consumer credit reporting agency is required to "provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency."

196.   It is well-settled that a consumer credit reporting agency fails to conduct a reasonable re-investigation as required by 15 U.S.C. §1681i(a) when it merely parrots the information provided to it by a furnisher without conducting any actual investigation of its own.

197.   PLAINTIFF submitted written disputes to each of the consumer credit reporting agencies EXPERIAN, EQUIFAX, and TU in February and May of 2020.

198.   However, EXPERIAN, EQUIFAX, and TU all failed to comply with their requirements under 15 U.S.C. §1681i(a).

199.   EQUIFAX and EXPERIAN failed to comply by completely failing to process PLAINTIFF'S February 20th disputes at all and failing to provide any response at all to PLAINTIFF.

200.   EQUIFAX also failed to comply by failing to process PLAINTIFF'S May 18th dispute letter within 30 days, as evidenced by the fact that it failed to provide any response to PLAINTIFF at all until July 21, 2020, more than 30 days after its deadline in June.

201.   EQUIFAX and TU also failed to comply because out of the disputes they did process they failed to process all items disputed and only processed the disputes as to one or some of the accounts in dispute.

202.   EXPERIAN, EQUIFAX, and TU also all failed to comply with 15 U.S.C. §1681i(a) because the accounts that they did not delete arose from each agency merely parroting the information provided by the furnishers who falsely verified the accounts

**Complaint for Damages and Injunctive Relief**

as accurately being reported against PLAINTIFF, without conducting any actual re-investigation of their own, including by failing to take into consideration all information provided by PLAINTIFF in connection with his disputes, and because parroting is well-settled to be a lack of reasonable re-investigation.

203.   Moreover, b  EXPERIAN, EQUIFAX, and TU also failed to comply with their requirements under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the information found to be inaccurate, incomplete, or that which could not be verified.

204.   Negligent violations of the FCRA require the offending agency to be liable for (1) "any actual damages sustained by the consumer as a result of the failure"; and (2) "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681o(a).

205.   Insofar as a consumer reporting agency willfully violates a provision of the FCRA, such an agency is liable for (1) "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000"; (2) "such amount of punitive damages as the court may allow"; and (3) "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681n(a).

206.   A violation of the FCRA is "willful" if it involves the commission not only of "acts known to violate the [FCRA]," but also "reckless disregard of statutory duty." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56-57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

207.   The Ninth Circuit in *Syed v. M-I, LLC* 2017 U.S. App. LEXIS 1029, FN 6 (9th Cir. Jan. 20, 2017) recently held that, in credit reporting violation cases, "[W]here a party's action violates an unambiguous statutory requirement, that fact alone may be sufficient to conclude that violation is reckless, and therefore willful. … [R]ecklessness may be determined by objective evidence alone."

208.   PLAINTIFF is informed and believe that EXPERIAN, EQUIFAX, and TU's violations were negligent at a minimum, because a reasonable person would have

**Complaint for Damages and Injunctive Relief**

simply reviewed the accounts that were in dispute and discovered that the information being reported against PLAINTIFF was, in fact, not his information, yet they all failed to do that.

209.   PLAINTIFF is also informed and believes that EXPERIAN, EQUIFAX, and TU's violations were willful, in that they each certainly know of their obligations under 15 U.S.C. §1681i because they each have been sued thousands of times throughout the nation for violations of 15 U.S.C. §1681i by both government and private litigants, they have each been the subject of multiple judgments for violations of 15 U.S.C. §1681i, yet they have each disregarded a high degree of risk that their refusal to simply review the account records would result in the information incorrectly remaining on PLAINTIFF'S credit reports and continuing to the basis for denials of credit.

210.   As a result of these negligent and willful violations, PLAINTIFF has suffered actual damages as identified in the statement of facts above.

**SIXTH CAUSE OF ACTION**
**FEDERAL FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681e**
**(AS AGAINST DEFENDANTS EXPERIAN, EQUIFAX, AND TU ONLY)**

211.   PLAINTIFF repeats, re-alleges, and incorporates by reference all other paragraphs, as if fully set forth herein.

212.   At all times during the aforementioned actions, there was in full force and effect the following obligations upon Defendants EXPERIAN, EQUIFAX, and TU pursuant to 15 U.S.C. § 1681e(a) & (b) of the Federal FCRA (emphasis added):

(a) Identity and purposes of credit users. ***Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 605 [15 USCS § 1681c]*** and to limit the furnishing of consumer reports to the purposes listed under section 604 [15 USCS § 1681b]. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every

34

**Complaint for Damages and Injunctive Relief**

consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 604 [15 USCS § 1681b].

(b) Accuracy of report. ***Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates***.

213.   EXPERIAN, EQUIFAX, and TU have prepared and published to third-parties consumer reports concerning PLAINTIFF that contained information that does not belong to PLAINTIFF.

214.   In doing so, EXPERIAN, EQUIFAX, and TU have each failed to assure "maximum possible accuracy" of information pertaining to PLAINTIFF as the consumer to whom the reports pertained.

215.   EXPERIAN, EQUIFAX, and TU's own records confirm how many reports have been prepared and published to third parties with false information that resulted from a failure to assure "maximum possible accuracy" of information pertaining to PLAINTIFF as the consumer to whom the reports pertained.

216.   EXPERIAN, EQUIFAX, and TU do not have reasonable procedures in place to assure maximum possible accuracy of the information about the consumer to whom it relates, or it did not follow such procedures if any are in place, in violation of 15 U.S.C. 1681e(a) and 1681e(b) of the FCRA.

217.   Negligent violations of the FCRA require the offending agency to be liable for (1) "any actual damages sustained by the consumer as a result of the failure"; and (2) "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681o(a).

218.   Insofar as a consumer reporting agency willfully violates a provision of the FCRA, such an agency is liable for (1) "any actual damages sustained by the consumer

as a result of the failure or damages of not less than $100 and not more than $1,000"; (2) "such amount of punitive damages as the court may allow"; and (3) "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681n(a).

219.   A violation of the FCRA is "willful" if it involves the commission not only of "acts known to violate the [FCRA]," but also "reckless disregard of statutory duty." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 56-57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007).

220.   The Ninth Circuit in *Syed v. M-I, LLC* 2017 U.S. App. LEXIS 1029, FN 6 (9th Cir. Jan. 20, 2017) recently held that, in credit reporting violation cases, "[W]here a party's action violates an unambiguous statutory requirement, that fact alone may be sufficient to conclude that violation is reckless, and therefore willful. … [R]ecklessness may be determined by objective evidence alone."

221.   PLAINTIFF is informed and believe that EXPERIAN, EQUIFAX, and TU's violations were negligent at a minimum, because a reasonable person would have simply reviewed the accounts that were in dispute and discovered that the information being reported against PLAINTIFF was, in fact, not his information, yet they all failed to do that.

222.   PLAINTIFF is also informed and believes that EXPERIAN, EQUIFAX, and TU's violations were willful, in that they each certainly know of their obligations under 15 U.S.C. §1681e because they each have been sued thousands of times throughout the nation for violations of 15 U.S.C. §1681e by both government and private litigants, they have each been the subject of multiple judgments for violations of 15 U.S.C. §1681e, yet they have each disregarded a high degree of risk that their refusal to simply review the account records would result in the information incorrectly remaining on PLAINTIFF'S credit reports and continuing to the basis for denials of credit.

223.   As a result of these negligent and willful violations, PLAINTIFF has

suffered actual damages as identified in the statement of facts above.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFs pray that judgment be entered against each Defendant individually, and PLAINTIFF be awarded damages as follows:

1.     Actual damages in the amount of $150,000.00, or as the jury may allow, jointly and severally against all Defendants;

2.     Plus statutory damages of $1,000.00 for each individual willful violation of the Federal FCRA, from each Defendant individually, pursuant to 15 U.S.C. §1681n(a)(1)(A);

3.     Plus punitive damages in an amount to be determined by a jury for willful violations of the Federal FCRA, from each Defendant individually, pursuant to 15 U.S.C. §1681n(a)(2);

4.     Plus punitive damages of $5,000.00 for each individual willful violation of Calif. Civ. Code § 1785.25(a), from DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED individually, pursuant to Calif. Civ. Code § 1785.31(a)(2)(A)-(C);

5.     Injunctive relief pursuant to Calif. Civ. Code § 1785.31(b) to order DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED to delete any inaccurate credit reporting in PLAINTIFF'S name;

6.     Plus statutory damages of $1,000.00 against DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER, NASA, AND PENFED individually pursuant to Calif. Civ. Code §1788.30(b);

7.     Plus statutory damages of up to $30,000.00 against DEFENDANTS AMEX, BARCLAYS, B OF A, CHASE, CITI, DISCOVER AND PENFED, individually, pursuant to Calif. Civ. Code § 1798.93(c)(6);

8.     Declaratory relief that Plaintiff is a victim of identity theft;

9.     Reasonable attorney's fees and costs to maintain the instant action.

///

**Complaint for Damages and Injunctive Relief**

1

**TRIAL BY JURY**

2          Pursuant to the Seventh Amendment to the Constitution of the United States of

3    America, PLAINTIFF is entitled to, and demands, a trial by jury.

4

5                                              SEMNAR & HARTMAN, LLP

6    DATED: 8-12-20                            *Jared M. Hartman*

7                                              _____,
                                               JARED M. HARTMAN, ESQ.

8                                              Attorneys for PLAINTIFF

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complaint for Damages and Injunctive Relief**